ESTATE OF NATHAN BOGRAD, DECEASED, J. B. KEIFER, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bograd v. Commissioner
Docket No. 4417-85.
United States Tax Court
T.C. Memo 1988-34; 1988 Tax Ct. Memo LEXIS 34; 55 T.C.M. (CCH) 11; T.C.M. (RIA) 88034; February 1, 1988; As amended February 2, 1988 *34 Held: Petitioner failed to prove that the taxable estate does not include the value of bearer notes purchased by decedent before his death; held further, petitioner is not entitled to a deduction for payments in settlement of claims of beneficiary of testamentary trust. Bruce A. Miller, for the petitioner. Linda K. West, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent issued a notice of deficiency on December 7, 1984, having determined a deficiency in the estate tax liability of the Estate of Nathan Bograd (petitioner) in the amount of $ 97,201.58. After concessions, the issues for decision are: (1) Whether bearer Treasury notes totalling $ 160,000 should be included in the taxable estate; and (2) whether the estate is entitled to a deduction for administrative expenses in the amount of $ 35,000. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Nathan Bograd (Dr. Bograd), decedent, died testate March 17, 1981. He was a resident of Montgomery, Alabama. His nephew, John B. Keifer, and his friend, Garnet Turner, were appointed to serve as co-executors of his estate. Letters Testamentary were granted to Mr. *35 Keifer and Mr. Turner by the Probate Court of Montgomery County, Alabama, on May 6, 1981, the same day the Probate Court admitted decedent's will be probate. At the time the petition in this case was filed, John B. Keifer resided in New Orleans, Louisiana.
Treasury Notes
During his life, Dr. Bograd purchased Treasury notes through Union Bank & Trust Company (Union Bank) in Montgomery, Alabama. The following securities were held in safekeeping by the bank and were reported on Schedule C of the estate tax return filed by [Text Deleted by Court Emendation] petitioner: Amount
Bought
Description
Maturity
$ 5,000
04/09/79
Treasury Note  9 5/8% due
03/31/81
5,000
04/30/79
Treasury Note  9 3/4% due
04/30/81
5,000
02/15/78
Treasury Note  7 1/2% due
05/15/81
5,000
07/02/79
Treasury Note  9 1/8% due
06/30/81
45,000
07/09/76
Treasury Note  7 5/8% due
08/15/81
10,000
10/31/79
Treasury Note 12 5/8% due
10/31/81
4,000
01/02/79
Treasury Note  9 3/8% due
12/31/82
Interest on these securities was paid semiannually by Union Bank. Dr. Bograd also purchased bearer (coupon) Treasury notes through Union Bank that were not held in safekeeping by the bank. These notes, listed below, were not included in the estate tax return, and they were *36 not found by the executors of the estate in Dr. Bograd's personal effects or his Union Bank safe deposit box which was located at the Eastbrook branch: [1] *37 Amount
Bought
Description
Maturity
$ 15,000
12/31/79
Treasury Note 11 3/8% due
12/31/81
10,000
08/15/79
Treasury Note  9% due
08/15/82
40,000
12/01/80
Treasury Note 13 7/8% due
11/30/82
30,000
12/31/80
Treasury Note 15 1/8% due
12/31/82
40,000
02/02/81
Treasury Note 13 5/8% due
01/31/83
20,000
03/02/81
Treasury Note 13 7/8% due
02/28/83
5,000
08/16/76
Treasury Note  8% due
08/15/86
Of these bearer notes, those purchased before 1981 were delivered by a representative of Union Bank of Dr. Bograd personally. He generally kept the notes in his safe deposit box located at the Eastbrook branch of Union Bank. Dr. Bograd and his sister, Ann Keifer, were the only individuals with access to this box. The two notes purchased in 1981, shortly before Dr. Bograd's death, were delivered by a representative of the bank to Coralie McDavid, a close personal friend to whom Dr. Bograd had authorized delivery. Jane Cannon, Assistant Vice-President of the investment department of Union Bank in Montgomery, kept records of the dates the bearer notes were received and delivered by the bank. The $ 40,000 note arrived on March 10, 1981. A representative of the bank delivered the note to Ms. McDavid on March 16, 1981, the day before decedent's death. The $ 20,000 note arrived at the bank *38 April 13, 1981. Ms. Cannon, who usually handled the delivery of the notes on behalf of the bank, was out of town when the note arrived and was unaware of Dr. Bograd's death. She phoned authorization for the release of the note pursuant to prior instructions of Dr. Bograd and Ms. McDavid picked up the note on April 16, 1981. Usually Ms. Cannon debited Dr. Bograd's account when he purchased a Treasury note, however Ms. McDavid purchased this note with a check she had received from Dr. Bograd drawn on another bank. Ms. McDavid delivered the $ 40,000 note to Dr. Bograd's sister the same day she picked it up from the bank. [2] *39 Upon receipt of the second note, Ms. McDavid put it in her own safe deposit box. In the statutory notice respondent determined that Dr. Bograd owned all of the bearer notes on the date of his death, that the notes were part of the gross estate, and that on the alternate valuation date their fair market value was $ 160,000. Accordingly, respondent increased the value of the taxable estate by $ 160,000.
Expenses of the Estate
In his Last Will and Testament decedent made various specific bequests of property, none of which included the bearer notes discussed above. The rest, residue, and remainder of his property was bequeathed to John B. Keifer as trustee of a testamentary trust to be known as the "Nathan Bograd Trust." The terms and conditions of the trust included the following: C. During the term of her life, I hereby authorize and direct my Trustee to allow, make available *40 and provide the use and occupancy of my home located on Hillwood Drive to Coralie McDavid. During such time the following circumstances and conditions will govern and control Coralie McDavid's use and occupancy of said home: 1. Coralie McDavid shall pay all taxes, insurance and repairs on said home up to a maximum of Five Hundred ($ 500.00) Dollars per year; and, in the event that Coralie McDavid is called upon to pay any sum in excess of Five Hundred ($ 500.00 Dollars per year for such taxes, insurance and repairs, the Trustee is hereby authorized and directed to reimburse her for such sum in excess of Five Hundred ($ 500.00) Dollars. * * * Ms. McDavid resided in Dr. Bograd's house after his death. Upon discovering that repairs to the house were needed, she contacted Garnet Turner. He inspected the house, had a structural engineer examine it, and then had contractors bid on the repair job. Mr. Turner also advised Mr. Keifer that repairs were necessary to preserve the property value. During the year 1982, Ms. McDavid expended a total of $ 20,696.04 for taxes, insurance, and repairs to the house. She sought reimbursement from Mr. Keifer, as Trustee, pursuant to the terms of the *41 testamentary trust. In April 1985, when it appeared that reimbursement would not be forthcoming, Ms. McDavid filed a Complaint in the Circuit Court of Montgomery County, Alabama, naming as defendants John B. Keifer, as Co-Executor of the Estate of Nathan Bograd, Deceased, and as Trustee of the Nathan Bograd Trust; and Garnet Turner, as Co-Executor of the Estate of Nathan Bograd, Deceased. Ms. McDavid averred that Mr. Keifer, as Co-Executor and Trustee, failed to reimburse her for payments she made and that his actions were willful, malicious, and without good cause. Ms. McDavid sought relief of $ 20,696.04 compensatory damages and $ 250,000 punitive damages. Count II of the Complaint charged the estate and the trustee with willfully, wantonly, and maliciously converting certain brass objects. Ms. McDavid sought compensatory damages of $ 1,200 and punitive damages of $ 250,000 with respect to this charge. The parties agreed to settle the dispute later that year. Ms. McDavid executed a Limited Release of All Claims whereby, in consideration of the sum of $ 15,000, she released all claims she may have had for payment of the repair bill and for failure of the estate or the trustee *42 to deliver the brass objects. Mr. Keifer executed a Full Release of All Claims whereby, in consideration of $ 1.00 and dismissal with prejudice of Ms. McDavid's lawsuit, he released all claims against her relating to the lawsuit, and specifically released "Any claim for negotiable instruments, treasury bills, treasury notes, or any other assets, tangible or intangible personal, real or chosen action which belong to or may have belonged to Nathan Bograd or the Nathan Bograd estate or the Nathan Bograd trust." A deduction in the amount of $ 35,000 was claimed on the estate tax return for attorney and executor's fees. In the statutory notice respondent determined that only $ 17,500 was paid and therefore allowable. At trial the parties stipulated that the estate was entitled to a deduction for attorney, executor, and accountant's fees in the amount of $ 37,010, rather than $ 17,500 as determined in the statutory notice. However the amount agreed upon did not include any payment in settlement of Ms. McDavid's claim. Respondent contends that the payment made to settle the lawsuit is not deductible. OPINION
Issue 1
We note initially that petitioner bears the burden of proving that respondent's *43 determinations are incorrect. Rule 142(a). Petitioner contends that the value of the taxable estate should not be increased by $ 160,000 because some of the notes which respondent determined to be part of the estate were given to Ms. Keifer by decedent as a return on the $ 50,000 investment decedent made for her. The remaining notes, petitioner maintains, were delivered to Ms. McDavid without valid authorization and therefore were not transferred by decedent. [3] *44 On the record before us petitioner's arguments are unfounded. Section 2033 provides that the value of the gross estate shall include the value of all property to the extent of decedent's interest therein at the time of death. The value of the gross estate also includes the value of any interest in property which decedent transferred, by trust or otherwise, within the 3-year period prior to decedent's death. Sec. 2035(a). [4] If decedent received full and adequate consideration for the property transferred, or upon transfer of the property decedent was not required by section 6019 to file a gift tax return with respect to the transfer, section 2035(a) does not apply. Sec. 2035(b). In this case petitioner has not proven that the notes were not owned by Dr. Bograd when he died, or that they should not be included in his taxable estate for any other reason. *45 With the exception of the last two notes purchased, whereabouts of which were explained by Ms. McDavid, there is no indication that the notes were disposed of by Dr. Bograd before he died, by gift or otherwise. The location of and therefore possessory interest in $ 100,000 of the notes is simply unexplained. The only evidence petitioner presented was Ms. Keifer's testimony that Dr. Bograd gave her $ 70-80,000 of the notes in repayment of $ 50,000 she had given him to invest in the stock market. However we have completely disregarded this testimony because of the failure of Ms. Keifer to recollect any of the details pertaining to the alleged investments or the receipt of the notes. We are not required to take into account evidence that is clouded with uncertainty or simply unbelievable and have not done so here. . In contrast to Ms. Keifer, we found Ms. McDavid to be a credible witness. Her explanation of the events that took place was cogent and consistent and much of her testimony was corroborated by independent evidence such as letters or bank records as well as the testimony of Ms. Cannon, the bank's vice-president. *46 Ms. McDavid testified that she was aware of Dr. Bograd's personal and financial affairs and knew of no investing that he had done on behalf of or in connection with his sister. She also testified that Dr. Bograd generally kept Treasury notes in his safe deposit box and that she had accompanied him personally to the bank on several occasions when he clipped coupons from the notes. This is the only evidence of the possible whereabouts of the notes after they were delivered to Dr. Bograd. [5]
Based on Ms. McDavid's testimony we have found as fact that she delivered the $ 40,000 note to Ms. Keifer and kept the additional $ 20,000 note in safekeeping. *47 However, as stated above, we are unable to determine what happened to the remaining notes. On these facts we hold that the value of the $ 40,000 note given to Ms. Keifer is includable in decedent's gross estate pursuant to section 2035(a), and the value of the $ 20,000 note, held in safekeeping by Ms. McDavid is includable in decedent's gross estate pursuant to section 2033(a). [6] The remaining notes, not proven to have been disposed of otherwise, are presumed to be a part of decedent's estate. Based on the above, the value of the taxable estate should be increased by the value of the notes, or $ 160,000. [7] *48 Issue 2
Petitioner also contends that the estate is entitled to a deduction in the amount of $ 35,000 because the settlement of the lawsuit by Ms. McDavid against the estate and trust is an expense of administration. [8] In maintaining this position, petitioner claims that Ms. McDavid was a creditor of the estate [9] *49 rather than a beneficiary because she received more in the settlement than the cost of the repairs and because she named the trustee and co-executors as defendants in her suit to recover amounts paid to repair the house. Alternatively, petitioner contends that the estate should be permitted a deduction in the amount of $ 13,143.96, the amount by which the settlement payment exceeded the actual expenses and value of property Ms. McDavid claimed as a beneficiary. Respondent claims that the amount paid in settlement of Ms. McDavid's lawsuit is not deductible because the amount was not an "administration expense" within the meaning of section 2053(a)(2) because the payment was made in settlement of a trust beneficiary's claim, not in settlement of a debt owed for a deductible expense incurred by the estate. For the reasons below we agree with respondent. *50 In determining the value of the taxable estate, expenses of administration, as are allowable by the laws of the jurisdiction under which the estate is being administered, are deductible from the value of the gross estate. Sec. 2053(a)(2). Respondent's regulations provide that amounts deductible as "administration expenses" are: limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. * * * [Sec. 20.2053-3(a), Estate Tax Regs.]
Furthermore, Miscellaneous administration expenses include such expenses as court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc. Expenses necessarily *51 incurred in preserving and distributing the estate are deductible, including the cost of storing or maintaining property of the estate, if it is impossible to effect immediate distribution to the beneficiaries. Expenses for preserving and caring for the property may not include outlays for additions or improvements; nor will such expenses be allowed for a longer period than the executor is reasonably required to retain the property. [Sec. 20.2053-3(d)(1), Estate Tax Regs.] The amount paid in settlement of Ms. McDavid's claim does not fall within the statute or these regulations. Ms. McDavid brought her lawsuit to recover amounts which were payable pursuant to the terms of the testamentary trust established by decedent. That trust was comprised of the residue of decedent's estate which, including the house in which Ms. McDavid was to reside, was transferred to Mr. Keifer, as trustee. We recognize that as co-executor of the estate and trustee of the testamentary trust, Mr. Keifer served separate functions settling and administering decedent's estate and the testamentary trust. However, by naming Mr. Keifer as defendant in both capacities, Ms. McDavid did not change the nature of her *52 claim, which was the recovery of amounts which were payable pursuant to terms of the trust. The carrying on of a trust is a different enterprise from the settlement of an estate, , and expenses incurred by a testamentary trust, once property is passed through decedent's estate to the trust, are incurred due to the operation of the trust and are properly deductible by it only. . Here, the expense of repairing Dr. Bograd's house was an expense of the trust, not an expense of administration of the estate. [10] *53 Furthermore, any additional amounts paid, above the actual cost of the repairs, were also paid *54 as a result of the trust beneficiary's claim under the terms of the trust. Thus, Ms. McDavid's claim for damages does not transform that portion of her recovery which was in excess of the amount incurred for repairs into an expense of administration. The amount had nothing to do with the settlement of the estate or the disposition of the property of the estate. Moreover the $ 20,000 note which Ms. McDavid was permitted to keep was not specifically bequeathed otherwise and would have been a part of the residue from which the trust was comprised. While the distribution in settlement of her claim may affect the income tax consequences of the estate or the trust, it does not affect the estate tax consequences and does not reduce the taxable estate. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. No record of the serial numbers of the bearer notes listed above exists. The name of the owner of a bearer note is not printed on its face and no record of its ownership is maintained by the Bureau of Public Debt. Title of a bearer note passes by delivery from one owner to another without notice to the Bureau. If furnished with a complete description of a bearer note, which includes the issue title with rate of interest, issue and maturity dates, serial number and denomination, the Bureau of Public Debt's records would show if the particular bearer note is open or closed. If the note is closed, the Bureau would normally be able to furnish only the date it was received in the Department of the Treasury and the name of the Federal Reserve Bank or Branch that submitted the note. The Bureau would not be able to provide any information as to whom payment of the retired note was made if the note was redeemed, nor would the Bureau be able to determine who the owner of the note had been. 2. Ms. Keifer did not recall having received the $ 40,000 note from Ms. McDavid and further alleged that prior to his death, Dr. Bograd had given her $ 70-80,000 in Treasury notes in repayment of $ 50,000 she had given him to invest in the stock market for her. Ms. Keifer's testimony at trial about these events was vague at best. Her failure to recollect any details with respect to these events has lead us to completely disregard her testimony. She could not recall any details about the investments allegedly made by her brother on her behalf, and had no records indicating the amounts she gave him or dates she advanced monies to him. She reported no gain from the investments and failed to recollect receiving any forms reporting dividend income from the companies in which her brother allegedly invested. She also did not remember when she received the notes from her brother. 3. Petitioner's argument with respect to the notes delivered to Ms. McDavid is not entirely clear. As we understand it petitioner admits that Ms. McDavid received the notes, but claims that she did not have valid authorization to receive them and that they were not intended to be gifts to her. Petitioner then concludes that if the notes were not gifts, the property was not transferred by the decedent, and therefore would not be includable by reason of section 2035. It appears, however, that this conclusion omits consideration that the amounts would be includable under section 2033 since, under petitioner's theory, Ms. McDavid did not have rightful claim to the notes, but the estate did. We have concluded on the facts presented that Ms. McDavid was authorized to receive the $ 40,000 and $ 20,000 notes, and that she did so on behalf of the decedent. Therefore we have not addressed the issue as it has been framed by petitioner. 4. With certain exceptions, section 2035(a) does not apply to the estate of a decedent dying after December 31, 1981. Sec. 2035(d)(1). ↩
5. Ms. McDavid speculated, probably with good reason, that Ms. Keifer removed the notes from the safe deposit box at the direction of Dr. Bograd either before or shortly after his death. Ms. McDavid testified that Dr. Bograd indicated that although his sister was not a beneficiary under his will, she would be taken care of. Under these circumstances, and given the vagueness of Ms. Keifer's testimony, it is entirely possible that Dr. Bograd directed his sister to remove the notes from the safe deposit box to avoid any estate tax liability for them. ↩
6. We recognize that delivery of the $ 20,000 note did not take place until after Dr. Bograd's death, and that therefore the note itself was not a part of the estate. However, the proceeds with which the note was purchased would be includable in the value of the estate and the result under these circumstances would be the same. Because the parties argued on the basis of the note's includability we have referred to it rather than to the proceeds used to purchase the note. ↩
7. In the statutory notice respondent determined that on the alternate valuation date the fair market value of the notes equaled their face value. Petitioner has not challenged the value of the notes, therefore we have sustained respondent's determination.
8. Petitioner claims that the entire $ 35,000 is deductible only in the event that we determine, which we have, that the $ 20,000 note which Ms. McDavid was permitted to keep was includable in the taxable estate. ↩
9. Petitioner does not argue that the amount should be deductible as a "claim against the estate." See sec. 2053(a)(3) and sec. 20.2053-4, Estate Tax Regs. Claims against the estate "represent personal obligations of the decedent existing at the time of his death, whether or not then matured * * *" (sec. 20.2053-4, Estate Tax Regs.), and petitioner acknowledges that the value of a beneficiary's distributive share is not deductible from the gross estate for estate tax purposes. ; ; . Here, petitioner refers to Ms. McDavid as a "creditor" to distinguish her from a "beneficiary" when arguing that the amount paid in the settlement was an expense of administration under section 2053(a)(2). 10. In order to be deductible as an expense of administration, it is necessary that the deduction be an administration expense within the meaning of the statute and be allowable under state law. ; ; ; and see , (for discussion of the conflict in the courts with respect to this dual requirement). Because we have determined that the amounts paid were not expenses of administration, we have not addressed whether they would be allowable under state law. We also note that petitioner's reliance on , is misplaced. In that case decedent had created an inter vivos trust, placing substantially all of her property in the trust, net income of which was payable to her daughter. When decedent died the daughter sued to set aside the trust. The estate claimed a deduction for expenses of the trustee paid in connection with the defense of the daughter's claims. The deduction was allowed as an expense of administration of the estate because the defense of the suit against the trust was necessary to determine what property was to be included in the estate. The property in the trust would have become part of the estate if the trust was set aside. Otherwise it passed outside the estate. Here the defense of Ms. McDavid's claim was not necessary to determine what was to be included in the estate. Her suit pertained to and affected the trust only. ↩